# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 28, 2010

No. 09-20551

Lyle W. Cayce
Clerk

D. A., by next friend and individually; LATASHA A.,

Plaintiffs - Appellants

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT; CELESTINA MARTINEZ; SHARON COLVIN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR, District Judge.*

EDITH H. JONES, Chief Judge:

D.A., through his mother L.A., brought suit against the Houston Independent School District ("HISD") and two school officials, alleging that D.A.'s rights under various federal laws were violated because two of its schools failed to test him timely for special education. They sought declaratory relief, compensatory and punitive damages, for violations of the Individuals with Disabilities Education Act (20 U.S.C. § 1400 *et seq.*) ("IDEA"), § 504 of the Rehabilitation Act (29 U.S.C. § 794) ("§ 504"), the Americans with Disabilities

---

* District Judge, Northern District of Texas, sitting by designation.

No. 09-20551

Act (42 U.S.C. § 12101 *et seq.*) ("ADA"), the Age Discrimination Act (42 U.S.C. § 6104(f)), the Texas and United States Constitutions, and 42 U.S.C. § 1983. The district court granted summary judgment for the defendants. We affirm principally because appellants have not furnished proof of intentional discrimination as required by § 504 and the ADA, and § 1983 offers no additional cause of action for D.A.

## I.
## BACKGROUND

D.A. attended HISD as a pre-kindergarten student from 2005 until he withdrew from the district in January 2008. In pre-kindergarten, D.A.'s teacher noticed that he had trouble completing work and following directions. He was not tested for special education while in pre-kindergarten and was advanced to kindergarten. In kindergarten, he was still unable to complete his work. L.A., D.A.'s mother, wanted him to have special education testing. A substitute teacher for D.A.'s kindergarten class recommended special education testing, but the school counselor agreed only to conduct a speech therapy evaluation. When D.A.'s regular teacher returned, she had no trouble understanding D.A.'s speech. The school officials decided not to test D.A., but they failed to inform his mother of the decision.

Despite warning that D.A. might have to repeat kindergarten, his teacher promoted him to the first grade. She believed there would be more testing and special education opportunities for D.A. in the first grade. The school had a practice of waiting until the first grade to test children for special education, in order to give them a chance to develop.

In first grade, D.A. immediately misbehaved and performed below grade level. His teacher referred him for special education testing. D.A. was removed

No. 09-20551

from class to help him do his work. Eventually, L.A. had to sit with her son during class. A private speech pathologist who had been treating D.A. since kindergarten wrote to the school to express concern about D.A.'s psycho-educational problems. In October 2007, two months into the school year, the Intervention Assistance Team ("IAT") first met to consider D.A.'s needs and decided that a special education evaluation was premature because his teacher had not sufficiently documented D.A.'s problems. The IAT reached the same conclusion again on December 5. L.A. wrote several letters to the school requesting that D.A. be tested. The school evaluation specialist collected updated documentation from D.A.'s teacher and a psychologist and submitted the documents to a Committee of Evaluation Specialists, which ultimately determines whether a student's behavior warrants a special education referral. The IAT met before Christmas but delayed D.A.'s referral until after the holidays. On January 31, 2008, before any testing had occurred, L.A. withdrew D.A. from the HISD. D.A. entered the Conroe Independent School District where he was immediately recommended for special education testing.

L.A. filed an IDEA claim with the Texas Education Agency, which held a due process hearing in April 2008. A special hearing officer determined that HISD violated IDEA by failing to refer D.A. to an eligibility screening in October 2007. During the proceeding, L.A. requested that HISD fully test D.A.'s suspected disabilities, but the hearing officer ruled this claim moot because D.A. had left HISD and was already being tested for special education in the other district. The hearing officer rejected for insufficient proof the medical expenses allegedly incurred on D.A.'s behalf and concluded that monetary damages were unavailable under IDEA.

3

No. 09-20551

D.A. appealed the administrative decision to the district court, requesting declaratory relief, compensatory and punitive damages. D.A. asserted claims under IDEA, § 504, ADA, the Age Discrimination Act, the Texas and United States Constitutions, and 42 U.S.C. § 1983. In a comprehensive and thoughtful opinion, the district court granted summary judgment in favor of the appellees. The district court held that the plaintiff's IDEA claim for compensatory damages was not moot, but it affirmed the hearing officer's findings that the plaintiff lacked any evidence to support claims for compensatory relief. The court rejected liability under the ADA and § 504 because plaintiffs failed to demonstrate that the school's actions were motivated by bad faith or gross misjudgment. The district court dismissed the plaintiff's Age Discrimination Act claim for failure to exhaust the proper administrative remedies. The district court concluded that § 1983 cannot be used as an additional vehicle to redress violations of the ADA, § 504 or the IDEA. The plaintiff's constitutional claims were also dismissed. D.A. has appealed, contending that genuine issues of material fact exist concerning the district's liability and that the district court applied incorrect legal standards when interpreting the statutes.

## II.

## DISCUSSION[1]

---

[1] Although this case was filed to challenge the rejection of D.A.'s IDEA claim by the administrative hearing officer, the appeal relies only on the other statutory claims. The appellant's argument concerning the district court's adverse decision on the IDEA claim raises two points, mentioned only in passing. Because appellant neither briefs nor seeks relief under IDEA in this appeal, he has abandoned any such claim. *Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990). Waiving another point, appellant also chose not to brief the dismissal of the individual defendants.

No.  09-20551

The district court's grant of summary judgment on the non-IDEA claims is reviewed *de novo.*  Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).

**A.     § 504 and ADA Claims**

D.A. contends that the record reveals genuine material fact issues concerning whether, paraphrasing § 504:

> [he] was excluded from participation in, denied the benefits of, and subject to discrimination at school included, but [not] limited to being excluded from the classroom activities, learning, work assignments and lunch, being denied the benefits of receiving special education testing, speech testing, speech therapy, special education and free appropriate public education, and being subject to discrimination regarding his disability, race and age.

The district court, he asserts, erroneously heightened the standard for a district's liability under § 504.  Because this court has equated liability standards under § 504 and the ADA, we evaluate D.A.'s claims under the statutes together.  *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc).

A student may assert claims under IDEA as well as § 504 and the ADA. *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983).  This court and others have explained that while IDEA imposes an affirmative obligation on states to assure disabled children a free appropriate public education, *see, e.g.*, 20 U.S.C. § 1412(*l*), § 504 and the ADA broadly prohibit discrimination against disabled persons in federally assisted programs or activities.  *See* 29 U.S.C. § 794(a); 42 U.S.C. § 12132; *see also Sellers v. Sch. Bd.*

5

*of Manassas, Va.*, 141 F.3d 528-29 (4th Cir. 1998); *Pace*, 403 F.3d at 290-91.  A web of procedural regulations, including the "Child Find" mandate applicable here,[2] governs the school district's identification, assessment and treatment plans for disabled students.  The regulations seek to maximize educational professionals' coordination and collaboration with the parents.  Substantively, IDEA aims to provide an adequate educational opportunity, not necessarily the maximization of a disabled child's abilities, and it leaves considerable discretion in the hands of professionals.  *See Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034 (1982) (interpreting EAHCA, the statutory predecessor to IDEA).

Exactly what remedies remain under § 504 and the ADA for children whose parents are dissatisfied with the school's determinations under IDEA are unclear.  This court applies issue preclusion where the legal standards underlying such claims are not significantly different.  *See Pace*, 403 F.3d at 290.  In reaching this conclusion, *Pace* cited favorably an Eighth Circuit decision that applied claim and issue preclusion to "short-circuit redundant claims" when IDEA's administrative process "produces an administrative decision that is upheld on judicial review."  *Ind. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996).  Thus, the resolution of an IDEA claim in the school district's favor will frequently preclude parents' resort to redundant claims under § 504 and ADA.

Further constraining the viability of claims under the disability non-discrimination laws is this court's long-established rule that:

---

[2] *See* Child Find, 34 C.F.R. § 300.111(a) (2006).

No.  09-20551

> [A] cause of action is stated under § 504 when it is alleged that a
> school district has *refused* to provide reasonable accommodations for
> the handicapped plaintiff to receive the full benefits of the school
> program.

*Marvin H*, 714 F.2d at 1356 (emphasis in original); *see also Tatro v. Texas*, 703 F.2d 823, 832 (5th Cir. 1983) (*Tatro II*); *Helms v. McDaniel*, 657 F.2d 800, 806 n.10 (5th Cir. 1981).  *Marvin H* used the term "refusal" because the statute requires intentional discrimination against a student on the basis of his disability.  *See* 714 F.2d at 1357; *Sellers*, 141 F.3d at 528.  *Marvin H.* is consistent with courts that have held that to establish a claim for disability discrimination, in this educational context, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." *Monahan*, 687 F.2d at 1170; *see also Sellers*, 141 F.3d at 529; *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984).  As *Monahan* reasoned, experts often disagree on what the special needs of a handicapped child may be and the proper placement of a child is often is an arguable matter.

> That a court may, after hearing evidence and argument, come to the
> conclusion that an incorrect evaluation has been made, and that a
> different placement must be required . . . is not necessarily the same
> thing as a holding that a handicapped child has been discriminated
> against solely by reason of his or her handicap.

687 F.2d at 1170.  The court did not read § 504 as creating "general tort liability for educational malpractice" because the Supreme Court in interpreting the IDEA[3] has warned against a court's substitution of its own judgment for educational decisions made by state officials.  *Monahan* concluded that bad faith or gross misjudgment must be shown in order to state a cause of action under

---

[3] *See, e.g., Rowley*, 458 U.S. at 181, 102 S. Ct. at 3038 (interpreting EAHCA, the statutory predecessor to IDEA).

§ 504. *Id.* at 1171. "So long as state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504." *Id.* We concur that facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA.

The state hearing officer found that the school violated IDEA by failing to test D.A. for special education needs in October 2007, two months before the final testing decision was made. Because this was the only violation found, it could be contended that D.A. may not seek to recharacterize the district's other pre-referral and pre-intervention actions, which the hearing officer did not impugn, as discriminatory violations of § 504 or ADA. *See Indep. Sch. Dist. No. 283*, 88 F.3d at 562 (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796-99, 106 S. Ct. 3220, 3224-27 (1986)). Moreover, it could be argued that D.A. has no cognizable claim under § 504 or the ADA because the gravamen of his disagreement is the district's failure to diagnose his disability at an appropriate age. He cannot be discriminated against because of his disability until it has been demonstrated to exist. Under these scenarios, the district court might have found the § 504/ADA claims precluded or subject to dismissal. The school district, however, does not make these arguments on appeal.

What is preserved for review is that even though the hearing officer's findings may suggest an untimely diagnosis of D.A.'s psycho-educational problems, the error reflects no more than negligence. The district's actions, including its pre-referral attempts to use a disciplinary strategy with D.A., were

found "well intended" by the hearing officer.  The district court properly relied on the hearing officer's determination that the district delayed evaluating D.A. because the professionals believed that behavioral interventions would be successful and that the classroom teacher had not properly documented his behavior.  Further, construing the facts in the light most favorable to D.A., we, like the district court, find no fact issue as to whether HISD officials "departed grossly from accepted standards among educational professionals."  D.A.'s mere disagreement with the correctness of the educational services rendered to him does not state a claim for disability discrimination. *Marvin H.*, 714 F.2d at 1356. That HISD authorized an evaluation for special education within two months after its initial denial further demonstrates at most misjudgment, not bad faith. The district court correctly granted judgment as a matter of law on D.A.'s § 504 and ADA claims.[4]

## B.    Age Discrimination Act Claims

Strange as it may seem, D.A. could file a claim under the Age Discrimination Act, which provides that "no person . . . shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."  42 U.S.C. § 6102.

Under the Age Act, however, a plaintiff must exhaust his administrative remedies before filing an action in the district court.  *See* 42 U.S.C. § 6104(f); 34 C.F.R. § 110.39 (Department of Education enforcement regulations). Appellant did not fulfill any of the exhaustion requirements.  Instead, L.A.

---

[4]The court also correctly observed that D.A. has failed to offer proof of monetary damages either before the hearing officer or in court.

contends that she only became aware of the Age Act claim at the IDEA administrative hearing and that fulfilling both the IDEA and Age Act filing deadlines would have been impossible. Her sworn testimony, to the contrary, was that D.A.'s pre-kindergarten teacher told her that HISD probably would not test D.A. because of his young age. L.A. thus knew of the alleged age discrimination two years before the IDEA hearing. Despite this, appellant argues that L.A. did not know that age was a motivating factor in HISD's decision to delay testing because the pre-kindergarten teacher gave her a "pretexual reason" [sic]—that young children need time to develop before special education testing occurs. Whether right or wrong, the policy behind HISD's alleged discrimination does not excuse D.A. from the exhaustion requirement.

## C. § 1983 Claims

Section 1983 provides a cause of action when a person has been deprived of federal rights under color of state law. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To state a § 1983 cause of action, a plaintiff must allege a violation of rights secured by the Constitution or by federal laws. *Id.* However, where a statutory regime already provides a comprehensive set of remedies for its enforcement, there is a presumption against the availability of the more general remedial measures of § 1983. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). This principle renders further discussion of the intricacies of § 1983 unnecessary.

## 1. Based on alleged IDEA violations

In *Smith v. Robinson*, 468 U.S. 992, 104 S. Ct. 3457 (1984), the Supreme Court held that the EAHCA [IDEA] contained a comprehensive enforcement scheme through which disabled children could assert violations of their rights and that EAHCA claims cannot be pursued through § 1983. *Id.* at 1004-05,

No. 09-20551

1013, 104 S. Ct. 3464-65, 3469. Congress amended the statute to state: "[N]othing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal statutes protecting the rights of handicapped children and youth." 20 U.S.C. § 1415(*l*).[5] Since the addition of § 1415(*l*), this circuit has not addressed whether recovery may be had through § 1983 for IDEA violations.[6] Other circuits have held that this amendment did not abrogate *Smith*'s holding that EAHCA/IDEA violations may not support § 1983 claims. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 795-96 (3d Cir. 2007); *Sellers*, 141 F.3d at 529; *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1273 (10th Cir. 2000). We agree with the reasoning of these circuits. The comprehensive enforcement scheme established for IDEA violations justifies the presumption that it is meant to be exclusive absent congressional intent to create additional remedies. *See Lollar*, 196 F.3d at 609. Nothing in § 1415(*l*) indicates an intent to facilitate the expansive remedies under § 1983 in addition to IDEA's carefully calibrated mechanism to prevent or remedy violations. *See Jersey City Pub. Sch.*, 486 F.3d at 802. D.A. cannot assert an IDEA claim through § 1983.

## 2.   Based on alleged § 504 and ADA violations

D.A.'s argument that he can use § 1983 as a method to enforce alleged violations of rights under the ADA and § 504 is foreclosed by this court's decision in *Lollar v. Baker*, 196 F.3d at 603. *Lollar* held that because Congress created

---

[5]This provision was originally codified at 20 U.S.C. § 1415(f), but is now at § 1415(*l*).

[6]Before the addition of § 1415(*l*), we held that violation of EAHCA may not be enforced through § 1983 because the EAHCA provided the exclusive remedy. *Marvin H.*, 714 F.2d at 1357-58.

11

No.  09-20551

a specific and comprehensive enforcement mechanism under § 504 to ensure the rights of the disabled persons, the presumption controls against invoking a more general remedial scheme to vindicate those rights. *Id.* Appellant cannot pursue his ADA and § 504 claims through § 1983.

**3.     Based on alleged constitutional violations**

Appellants argue that HISD violated D.A.'s constitutional rights by requiring him to show greater evidence of special needs than it required of non-black children. Appellants believe that because HISD has a history of over-identifying black children as requiring special-needs education, the district is now over-correcting by holding black children to a higher showing.

There is no actual evidence of the asserted over-correction. The only "evidence" D.A. points to is a statement by HISD's counsel during the closing argument before the hearing officer that HISD was concerned about over-identifying black children. This is not sufficient, not only because arguments by counsel are not evidence, but also because it establishes only that HISD was concerned about over-identification, not that HISD actually treated black children differently.

**III.**

For these reasons, the judgment of the district court is **AFFIRMED**.