# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50609

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2014

Lyle W. Cayce
Clerk

CLAUDIA ESTRADA,
As Next Friend of J.E.,

Plaintiff – Appellant

v.

SAN ANTONIO INDEPENDENT
SCHOOL DISTRICT

Defendant – Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-513

Before DAVIS, ELROD, and COSTA, Circuit Judges.

PER CURIAM:*

A San Antonio Independent School District employee molested a special needs high school student, who brought Americans with Disabilities Act and Rehabilitation Act claims against the District. He asserted that the District failed to provide reasonable accommodations for his disability and grossly

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50609

mismanaged his educational plan.  The district court dismissed the claims on summary judgment, and this appeal followed.

## I.

Pursuant to the Individuals with Disabilities Education Act (IDEA), schools must design plans, called Individualized Educational Programs (IEPs), which give disabled students "meaningful educational benefit[s]." *Klein v. Indep. Sch. Dist. Hovem*, 690 F.3d 390, 396 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1600 (2013).  "IEPs are created and periodically reviewed following meetings at which parents, teachers, other school personnel, and educational experts all participate." *Id.* at 395 (citing 20 U.S.C. § 1414(d)(1)(B)).

J.E., who brings this case through his mother, Claudia Estrada, was a student at Brackenridge High.  He graduated and now attends college.  J.E. suffers from cerebral palsy, is confined to a wheelchair, and needs help with transfers to and from the bathroom.

The District formulated an IEP for J.E. based on the recommendations of an Admission, Review, and Dismissal panel comprised of J.E., his mother, teachers, administrators, and special education staff.  Over the course of J.E.'s pre-K–12 education, that panel met 28 times to formulate and reformulate his IEP.  J.E. now identifies several flaws with the May 2008 IEP that he and his mother signed and agreed to, and which was in effect when the sexual assaults occurred.  For instance, a box next to the line "Mobility Needs" was checked but no additional information was provided; a box for Adaptive Equipment was left blank; and the IEP's Narrative Section says nothing about those and other missing or incomplete items.  Furthermore, the IEP form contained a checked "NO" box next to the question whether J.E. "requires daily assistance with toileting," despite the fact that J.E.'s physical therapist reported to school officials that he could not move from his wheelchair to the toilet alone.

2

No. 13-50609

In early 2006, a number of years before the incidents that gave rise to this lawsuit, a Brackenridge employee sexually abused three disabled students in a school bathroom. After those incidents, Brackenridge enacted a new policy, announced orally but not put in writing: two employees were required to be in a restroom with a disabled child at all times. But one-person transfers still sometimes occurred when other student aides were unavailable. This was consistent with the District's special education handbook, which demonstrates how a single staff member can safely transfer a student from a wheelchair to a toilet without extra assistance.

Later in 2006, the District hired Bret Jernigan, first as a substitute teacher and eventually as one of several support personnel for disabled students. In the spring of 2008, Brackenridge's principal assigned Jernigan to accompany J.E. and assist him during the school day with his mobility needs. Jernigan attended most of J.E.'s restroom visits with a coworker. Sometimes, however, no other adult was available to assist Jernigan, and he accompanied J.E. alone. Jernigan molested J.E. on three of those occasions. After the third incident, J.E. disclosed to his mother what had happened, and she told Brackenridge officials. Upon learning of the events, the Brackenridge principal filled out a critical incident report and met with Jernigan. He confessed soon afterwards.

J.E. brought suit in the Western District of Texas, alleging claims under Title IX, section 1983, the Rehabilitation Act, and the Americans with Disabilities Act (ADA).[1] The district court first granted summary judgment on the section 1983 claim, and later, in a separate opinion, granted summary judgment on the remaining claims. This appeal involves only the ADA and Rehabilitation Act claims.

---

[1] J.E. also brought claims against Jernigan that the parties later settled.

No. 13-50609

**II.**

The district court's grant of summary judgment is reviewed *de novo*. "Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010). We are "not limited to the district court's conclusions but can affirm a district court's judgment on any grounds supported by the summary judgment record." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

*Americans with Disabilities Act Claim*

In support of the ADA claim, J.E. alleges that the District: (1) failed to have an accessible, safe bathroom for a wheelchair-bound student; (2) failed to provide him with two-person transfers; (3) did not have accessible doors across the campus that he could utilize; and (4) did not enact an evacuation plan for him in case of an emergency. These failures to accommodate, J.E. contends, constitute intentional discrimination that allows him to recover compensatory damages. *See D.A.*, 629 F.3d at 453–55 (requiring plaintiffs to show intentional discrimination to recover compensatory damages under the ADA).

Undisputed evidence rejects the factual predicate for each of these claims. The bathroom that J.E. utilized had safety devices installed to assist handicapped students. Beyond that, several urinals in Brackenridge's main building were handicapped accessible. Two Brackenridge employees accompanied J.E. for the vast majority of his bathroom visits, and J.E. presents no authority suggesting that the District's failure to provide two-person

4

No. 13-50609

transfers on every occasion supports a finding of intentional discrimination.[2] As for campus-wide accommodations, Brackenridge employs three automatic door openers, and the District had emergency evacuation plans for "students in wheelchairs" and for J.E. specifically. Based on those accommodations, no reasonable juror could find that the District intentionally discriminated against J.E. in violation of the ADA. *See D.A.*, 629 F.3d at 453–55; *see also, e.g.*, *I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 780 (W.D. Tex. 2012) (noting that attempts to accommodate, "even if imperfect, establish a lack of intentional discrimination").

### *Rehabilitation Act Claim*

J.E. asserted two distinct Rehabilitation Act claims in the district court. One was that the District created a hostile educational environment by failing to protect him from being sexually abused. At the outset of oral argument, however, counsel for J.E. conceded that this claim could not survive our recent decision in *Estate of Lance v. Lewisville Independent School District*, 743 F.3d 982 (5th Cir. 2014). Thus, only the following Rehabilitation Act claim remains: that the District grossly mismanaged his IEP.

*Lance* thoroughly set forth the framework for evaluating a Rehabilitation Act claim premised on a school district's failure to provide a free appropriate public education. To "establish a claim for disability discrimination, in the education context, something more than a mere failure to provide the 'free appropriate education' required by IDEA must be shown." *Lance*, 743 F.3d at 995 (quoting *D.A.*, 629 F.3d at 454 (internal alterations omitted)). That "something more" is evidence of bad faith or gross

---

[2] We do not decide whether a plaintiff could succeed on a claim for injunctive relief under the ADA based on similar bathroom practices.

mismanagement. *See D.A.*, 629 F.3d at 454 (citing *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982)).

J.E. has not met that threshold; indeed, he is unable to make the preliminary showing that the District failed to provide a free appropriate public education. *Lance*, 743 F.3d at 992 ("At a minimum, then, [a plaintiff is required] to allege a denial of a FAPE under IDEA to sustain a § 504 claim based on the denial of a § 504 FAPE because '§ 504 regulations distinctly state that adopting a valid IEP is sufficient but not necessary to satisfy the § 504 FAPE requirements.'" (quoting *Mark H. v. Lemahieu*, 513 F.3d 992, 933 (9th Cir. 2008))). The District convened 28 separate panel meetings to formulate J.E.'s specific educational plan. Those efforts clearly had an impact as J.E. graduated high school and is now attending college. Thus, the flaws that J.E. identifies in his IEP—including missing or incomplete items on the IEP form, a failure to specifically denote that he needed two-person transfers, and generally, what he labels a deficient "check-the-box" approach—amount to, at worst, procedural defects. Such procedural defects "alone do not constitute a violation of the right to a [free appropriate public education] unless they result in the loss of an educational opportunity." *Klein*, 690 F.3d at 396. We rejected similar challenges to an IEP in *Klein*, holding that a student had received a free appropriate public education despite assertions that "IEPs were not sufficiently individualized, the collaborative process was thwarted, and [the district] afforded no 'academic benefit' tailored to his disability." 690 F.3d at 396–97. We noted the student's strong academic performance and observed that the school district did far more "than robotic IDEA form-checking to assist his performance in school." *Id.* at 398. The same is true here.

The sexual assault that gave rise to this case was horrible, and we agree with the trial court that the District should consider reexamining its policies in light of these multiple incidents of student sexual abuse. Under our case

law, however, there is insufficient evidence to establish that the District failed to provide J.E. educational opportunities or grossly mismanaged his IEP. Dismissal of the Rehabilitation Act claim was therefore warranted.

### III.   Conclusion

The district court correctly granted summary judgment on J.E.'s Rehabilitation Act and ADA claims.  The judgment below is AFFIRMED.