**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 6, 2015[*]
Decided January 13, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1125

| | |
|---|---|
| ANDRE SNEED, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | Nos. 11 C 6616 & 11 C 7082 |
| CITY OF HARVEY, ILLINOIS, et al., | |
|     *Defendants-Appellees*. | John F. Grady, |
| | *Judge*. |

## O R D E R

The City of Harvey, Illinois, fired Andre Sneed from his job as a police officer, giving as its reason that Sneed had falsely accused a superior officer of assaulting him. Sneed contends, however, that really he was fired because he suffers from post-traumatic stress disorder and because he spoke out about fraud and corruption in

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

the police department. He filed two lawsuits (which were consolidated and resolved together) against the City and its mayor, the City's corporation counsel, the police chief, the officer who allegedly assaulted him, and several other coworkers. Sneed principally claimed violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12201–12213, and the First Amendment. The district court granted summary judgment for the defendants on all claims, and Sneed appeals. We agree with the district court that a jury could not reasonably find for Sneed on any of his claims.

Except as noted, the following facts are undisputed and presented in the light most favorable to Sneed, as the party opposing summary judgment. See *Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014); *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). Sneed joined the Harvey police force in 2007 and was assigned to a unit that investigated crimes involving gangs and drugs. While Sneed was in that unit, fellow officer Archie Stallworth began providing security for an undercover FBI agent he thought was a drug dealer. Stallworth eventually was convicted of trying to possess cocaine for distribution and also falsifying a police report to impede the FBI's investigation. See *United States v. Stallworth*, 656 F.3d 721, 723–24 (7th Cir. 2011). Sneed had logged in the false report in violation of the police department's procedures but was not charged with any crime. See *id.* at 725. In November 2008, after Stallworth's arrest, the police department disbanded his and Sneed's unit and reassigned Sneed.

Sneed injured his shoulder while on duty in January 2009 and was placed on paid medical leave. After that he filed a series of administrative charges of discrimination with the Equal Employment Opportunity Commission. The first, filed in February 2009, accused the police department of age discrimination. The second, filed less than two months later in April, alleged that the department had agreed to a monetary settlement to resolve the February charge but then failed to tender a check, purportedly in retaliation for filing that first charge.

At the end of April 2009, Sneed's psychiatrist declared him unfit for duty because of PTSD. The psychiatrist attributed that condition to Sneed's involvement in multiple shootings while on duty along with "significant paranoia (psychotic episode)" experienced after his shoulder surgery. The psychiatrist recommended that Sneed be limited to "desk duty and midnight shift," but the only position of that kind—the late shift in the radio room—was filled, so Sneed remained on paid medical leave.

He was still on medical leave a year later, in April 2010, when he followed the City's chief of police, Denard Eaves, to a bowling alley in nearby Dolton, Illinois. When

Eaves left the bowling alley, Sneed reported to Dolton police that he was driving while intoxicated. Dolton officers responded and took Eaves to the Dolton police station but released him without charges. When Eaves exited the building, he saw Sneed standing outside the station and called him a "psycho."

Sneed then hired a lawyer and complained to the City's corporation counsel, Bettie Lewis, that Eaves and other officers were committing unspecified misconduct. Lewis and outside counsel tried to investigate Sneed's allegation but closed the matter as "inconclusive" after Sneed and his lawyer failed to submit what they said was evidence that would substantiate Sneed's accusation.

Then in September 2010 Sneed filed a third administrative charge with the EEOC, this time accusing the police department of retaliating for his April 2009 charge by refusing a reasonable accommodation for his PTSD and not promoting him or raising his pay while he was on medical leave. A few months later, in January 2011, Sneed reported to the police department's internal affairs division that unnamed officers were violating department rules by working private security details at local schools while on duty.

Sneed resumed active duty in March 2011 once he was medically cleared to do so. That month and the next he sent several letters to Harvey police officials and the City's mayor, Eric Kellogg, accusing Chief Eaves of corruption, incompetence, attending a political fundraiser while on duty, and targeting Sneed in order to harm him or terminate his employment. Near the end of April 2011, Commander Cameron Forbes instructed Sneed to accompany him to a meeting with another commander to discuss one of Sneed's letters to the department. After that meeting Sneed said he was "unlawfully confined" by Forbes and filed a demand under the Illinois Freedom of Information Act, 5 ILCS 140, for videos from security cameras in the meeting room. In May 2011 the department responded that no video was available because the cameras had been inoperable. Two days later Sneed delivered a union grievance to Forbes, who accepted it but refused to sign a receipt. Sneed then asked Sergeant John Rizzi, whose office was next door, to witness Forbes's refusal to sign the receipt. While Sneed was standing outside Rizzi's office, Forbes exited his own office, entered Rizzi's, and shut the door.

During this encounter Commander Forbes had no physical contact with Sneed, yet immediately afterward Sneed wrote to another sergeant accusing Forbes of having "very very forcefully shoved" the door at him, "intentionally attempting to strike" him. He required medical treatment for a sore shoulder, Sneed continued, because he had

blocked the swinging door with his body to stop it from striking his face. Sneed also filed a formal incident report accusing Forbes of battery and a claim for worker's compensation stating that the "door was slammed shut onto" his arms. The police department investigated and concluded after reviewing security videos that Sneed was lying. After a pretermination hearing in October 2011, see *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985), the department fired Sneed for falsifying reports about the encounter with Forbes. Sneed proceeded to binding arbitration, and in January 2013 the arbitrator upheld Sneed's dismissal after finding that his accusation against Forbes and his application for workers' compensation contained "grossly inaccurate and incorrect" versions of what occurred and that he had engaged in "unbecoming conduct."

Meanwhile, Sneed had commenced this litigation in September 2011. As noted, he principally claimed that the City had violated the ADA by not assigning him to a midnight-shift desk job to accommodate his PTSD, and that he was fired in violation of the First Amendment for speaking up about fraud and corruption in the police department. (Sneed lodged additional claims under federal and state law, including a claim of battery against Commander Forbes. Sneed's appellate brief alludes to some of these other claims but does not develop an argument about any of them. See FED. R. APP. P. 28(a)(8); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014).) In granting summary judgment for the defendants, the district court assumed that Sneed had been disabled but concluded that a jury could not find for him on his ADA claim because he didn't dispute that suitable jobs weren't available when he sought accommodation. As for the First Amendment, the court continued, the applicable statute of limitations barred resting the claim on events more than two years before Sneed filed suit and, regardless, Sneed lacked evidence that his speech—letters accusing coworkers of engaging in fraud and corruption—was a motivating factor in his dismissal.

On appeal Sneed argues that his ADA claim should have survived summary judgment because, he insists, there is a genuine issue of material fact about whether the police department had a "desk duty and midnight shift" position available. Yet Sneed never contested the defendants' evidence that only the late shift in the radio room, which was filled, met the work restrictions his psychiatrist had imposed. The ADA requires employers to assign disabled employees to vacant positions for which they are qualified so long as the accommodation would not be unreasonable or cause the employer undue hardship. *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 764–65 (7th Cir. 2012); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001). The police department was not required, however, to reassign *other* employees to create a new vacancy for Sneed. See *Ozlowski v.*

*Henderson*, 237 F.3d 837, 841 n.2 (7th Cir. 2001); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374 (7th Cir. 2000); *Duvall v. Georgia-Pacific Consumer Prods., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010).[1] Additionally, while Sneed's PTSD might have constituted a physical or mental impairment that substantially limited a major life activity even though the condition was temporary, see *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329, 332 (4th Cir. 2014), Sneed does not dispute that the police department provided paid medical leave for the entire time that his PTSD prevented him from performing his regular duties, which may itself have been a reasonable accommodation of disability, see *Basith v. Cook Cnty.*, 241 F.3d 919, 932 (7th Cir. 2001); *Amadio*, 238 F.3d at 928; *Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 (9th Cir. 2006).

Sneed also challenges the district court's conclusion that his First Amendment retaliation claim is barred by the statute of limitations to the extent it rests on conduct occurring more than two years before this action was commenced. Sneed contends that the statute of limitations governing § 1983 claims in Illinois is five years. As the district court correctly recognized, however, a two-year statute of limitations governs § 1983 actions arising in Illinois. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). As for the merits of his First Amendment claim, Sneed repeats his contention that the City, Chief Eaves, Mayor Kellogg, and corporation counsel Lewis fired him because he complained about fraud and corruption in the police department. Although a job loss can be a deprivation likely to deter speech, the district court correctly explained that Sneed did not submit evidence from which a jury reasonably could find that his accusations, even if protected speech, were at least a motivating factor in the City's decision to fire him. See *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012). Sneed does not dispute that his own workplace misbehavior—submitting to the department multiple false documents relating to the incident with Forbes—was the cause of his dismissal.

---

[1] In his complaint Sneed separately cast the alleged failure to accommodate his PTSD as a conspiracy by the defendants actionable under 42 U.S.C. § 1983. Sneed could not invoke § 1983 to expand or supplant the ADA's comprehensive remedial scheme. See *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012); *Latasha v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 456–57 (5th Cir. 2010); *M.M.R.-Z v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008); *Aslbrook v. City of Maumelle*, 184 F.3d 999, 1010–11 (8th Cir. 1999); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997). In any event, the absence of evidence from which a jury reasonably could find that the ADA was violated also forecloses Sneed's conspiracy theory. See *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304–05 (7th Cir. 2011); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

We have reviewed Sneed's remaining contentions, and none has merit. Accordingly, the district court's judgment is AFFIRMED.