Rolando Olvera, United States District Judge
Before the Court is San Benito Consolidated Independent School District's ("Defendant") "Defendant San Benito Consolidated Independent School District's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" ("Defendant's MTD") (Docket No. 7). E.M., through his best next friend and mother Monica Guerra ("Ms. Guerra") (collectively "Plaintiff"), timely filed "[Plaintiff's] Response to San Benito Independent Consolidated School District's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted"
*621 ("Plaintiff's Response") (Docket No. 11). Defendant timely filed its "Reply to Plaintiff's Response to Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" ("Defendant's Reply") (Docket No. 18). For the reasons below, Defendant's MTD is GRANTED IN PART and DENIED IN PART.
I. FACTUAL AND PROCEDURAL BACKGROUND [1]
During the relevant time, E.M. attended Miller Jordan Middle School ("Middle School") in San Benito, Texas-a school within Defendant's school district. E.M. is a child with several disabilities, including chronic asthma, Attention Deficit Hyperactivity Disorder ("ADHD"), skeletal muscular nerve syndrome, developmental delays, and speech impediments.
On or about December 2, 2014, a classmate began to bully E.M. during world history class-calling him names and threatening physical violence. E.M. reported the bullying to these individuals: teacher Ms. Brenneke, school counselor Ms. Lanoy ("Counselor Lanoy"), and Principal Mary Leal ("Principal Leal"). On or about December 3, 2014, Ms. Guerra delivered letters to all three of the above individuals over her concerns about her son's situation. Defendant did not respond to her letters.
During the 2015-2016 school year, students in E.M.'s social studies class repeatedly called him names, damaged his property, and mocked his speech impediment. On or about October 27, 2015, Ms. Guerra delivered a second round of letters to Principal Bobbie Jo Hushen ("Principal Hushen"), Assistant Principal Rosie Garcia ("Assistant Principal Garcia"), and Counselor Lanoy about the harassment inflicted upon E.M. during social studies class. Ms. Guerra alleged the other students were targeting E.M. because of his speech impediment. Defendant did not respond to Plaintiff's second round of letters.
Around the same time, a group of sixth-grade students in a physical education class ("P.E.") supervised by Lamar Lewis ("Coach Lewis") began harassing E.M.-calling him names and repeatedly making fun of him for his physical and speech-related impediments. This harassment caused E.M. to fear changing clothes in the locker room. On or about December 9, 2015, Ms. Guerra delivered a third round of letters detailing her concerns about the harassment. Defendant did not respond to Plaintiff's third round of letters.
On or about February 25, 2016, a classmate intentionally tripped E.M. during P.E. ("February 2016 incident"). A different child then jumped and landed on E.M., slamming E.M.'s face against the floor and breaking E.M.'s front teeth. E.M. was sent to the school nurse, who called Ms. Guerra. Upon Ms. Guerra's arrival at school, Coach Lewis misrepresented that E.M. had chipped his front teeth playing basketball. Ms. Guerra requested to see the video of the incident, but Principal Hushen refused. That evening, Assistant Principal Garcia informed Ms. Guerra she had taken a statement from E.M. without the authorization or presence of Ms. Guerra.
On or about February 29, 2016, Ms. Guerra contacted Ruben Franco ("Mr. Franco"), Defendant's Director of Student and Administrative Services, and again requested to see video of the February 2016 *622 incident. Mr. Franco refused Ms. Guerra's request because Principal Hushen briefed him on the incident and Mr. Franco believed Principal Hushen's version of events. Ms. Guerra then requested information about how to file a complaint, but Mr. Franco refused to give her said information. Following their meeting, Ms. Guerra repeatedly tried to contact Mr. Franco, but Mr. Franco never responded.
On or about March 2, 2016, Ms. Guerra delivered a fourth round of letters to Principal Hushen, Assistant Principal Garcia, Counselor Lanoy, and Coach Lewis expressing her frustration with the following: (i) not being allowed to view the video of the February 2016 incident, and (ii) Defendant's failure to address the bullying and harassment against E.M. Defendant did not respond to Plaintiff's fourth round of letters. Ms. Guerra later discovered Principal Hushen falsely represented to the school district's police department that Ms. Guerra no longer wished to pursue an investigation into the February 2016 incident.
On or about March 11, 2016, the same group of sixth-grade students who bullied E.M. during P.E. supervised by Coach Lewis approached E.M. while he was playing cards. The students tore up E.M.'s cards and homework. On or about March 21, 2016, Ms. Guerra delivered a fifth round of letters, this time requesting that Defendant place E.M. in a different P.E. class. Defendant did not respond to Plaintiff's fifth round of letters.
Other students continued to bully E.M. for the rest of the 2015-2016 school year and throughout the 2016-2017 school year. In February 2017, Ms. Guerra delivered a sixth letter to "Principal Perez"[2] about a specific group of students consistently bullying E.M. and his brother. Defendant did not respond to Plaintiff's sixth round of letters. This group of students made threats of violence against E.M. and his brother, causing both boys to fear attending school.
In April 2017, a classmate in E.M.'s eighth period class began to harass E.M.-making fun of his speech impediment and calling him names. Ms. Guerra delivered a seventh round of letters detailing her concerns. Defendant did not respond to Plaintiff's seventh round of letters.
At some point, Defendant reported Ms. Guerra to the Social Security Administration to have E.M.'s Supplemental Security Income ("SSI") benefits discontinued. Defendant also dismissed E.M. from certain special education services and never provided a psychological assessment, school-based counseling services, payment for community-based counseling services, or social skills training for E.M.
As a result, Plaintiff began this action August 23, 2018.
II. LEGAL STANDARD
The dismissal of one or more of Plaintiff's claims is appropriate if the complaint fails to state facts on which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, courts must accept as true all well-pleaded facts and allegations in the complaints. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The question [...] is whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." Gregson v. Zurich Am. Ins. Co. , 322 F.3d 883, 885 (5th Cir. 2003). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."
*623 Fernandez-Montes v. Allied Pilots Ass'n , 987 F.2d 278, 284 (5th Cir. 1993).
III. LEGAL ANALYSIS
A. Plaintiff's Constitutional Claims
Plaintiff's Complaint alleged violations of E.M.'s First and Fourteenth Amendment rights. Docket No. 1 at 20-22. Rather than defend the constitutional claims, Plaintiff's Response explicitly abandoned them. Docket No. 11 at 7, n.1 ("[i]n his Original Complaint E.M. alleged constitutional violations as well. He abandons those claims at this time...") (emphasis in original). But Plaintiff also states-if the discovery process produces enough facts to support a constitutional claim-Plaintiff will seek leave of court to amend the complaint. Id. Courts freely give leave to amend complaints when justice requires. Fed. R. Civ. P. 15(a)(2). The Court will thus dismiss Plaintiff's First and Fourteenth Amendment claims without prejudice while noting that any future amendment of Plaintiff's Complaint would require leave of Court to do so.
B. Plaintiff's Regulatory Claims
Plaintiff's Complaint alleges Defendant violated underlying regulations of Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, as follows:
i. Video of the February 2016 Incident
Plaintiff alleges Defendant prevented Ms. Guerra from viewing a video of the February 2016 incident. Docket No. 1 at 13-14. Section 504 regulations require a school district to give the parents or guardian of a child who needs special instruction a chance to examine relevant records "with respect to actions regarding the identification, evaluation, or educational placement." 34 C.F.R. § 104.36. Viewed in the light most favorable to Plaintiff, the video could contain information relating to the identification, evaluation, or educational placement of special education services for E.M. Thus, Plaintiff has sufficiently pleaded a violation of 34 C.F.R. § 104.36.
ii. Failure to Notify
Plaintiff alleges Defendant failed to notify Ms. Guerra of relevant procedural safeguards, including grievance procedures and the identity of Defendant's "Section 504 Coordinator," in violation of RA regulations. Docket No. 1 at 18-19. Defendant does not present a substantial legal argument for dismissal of this claim in either Defendant's Motion or Defendant's Reply. See Docket Nos. 7, 18. Where a defendant does not address a claim in their motion to dismiss, a district court may decline to address whether the plaintiff's pleading of that claim is adequate. Dammon v. Folse , 846 F.Supp. 36, 37 n.1 (E.D. La. Feb. 2, 1994). Considering neither party has substantially briefed the issue, the Court declines to address the adequacy of Plaintiff's pleadings on the Failure to Notify claim.
C. Plaintiff's ADA/RA Claims
Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability, shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. Individuals may enforce Title II of the ADA and § 504 of the RA
*624 through a private right of action. Frame v. City of Arlington , 657 F.3d 215, 223 (5th Cir. 2011). Jurisprudence interpreting the ADA generally applies to the RA, and vice versa, because "[t]he remedies, procedures and rights available under the RA are also accessible under the ADA." Delano-Pyle v. Victoria County , 302 F.3d 567, 574 (5th Cir. 2002) (internal citations omitted). Thus, to establish a cause of action under either the ADA or § 504 of the RA, a plaintiff must show the following:
(1) the person is a qualified individual within the meaning of the ADA; (2) the person is being excluded from participation in, or being denied the benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of a disability.
Melton v. Dallas Area Rapid Transit , 391 F.3d 669, 671-72 (5th Cir. 2004). The statutes do not create "general tort liability for educational malpractice." D.A ex rel. Latasha A. v. Houston Indep. Sch. Dist. , 629 F.3d 450, 454 (5th Cir. 2010). Rather, a plaintiff must sufficiently plead facts inferring that "a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." Estate of Lance v. Lewisville Indep. Sch. Dist. , 743 F.3d 982, 992 (5th Cir. 2014) (quoting Marvin H. v. Austin Indep. Sch. Dist. , 714 F.2d 1348, 1356 (5th Cir. 1983) (emphasis in original) ). And "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504." C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist. , 641 F. App'x 423, 426 (5th Cir. 2016) (quoting D.A. , 629 F.3d at 455 ).
Defendant does not contest that E.M. is "disabled" under the ADA but does contest the remaining two elements of the Melton test. Plaintiff promulgates four theories of statutory liability under the RA and ADA: (1) failure to provide E.M. "necessary accommodations and modifications" ("Failure to Provide"), Docket No. 1 at 23; (2) disability-based peer-to-peer harassment ("Failure to Protect"), Docket No. 1 at 22 (alleging the denial of a "safe and non-hostile educational environment"); (3) retaliation "against E.M. because of [Ms. Guerra's] advocacy." Docket No. 1 at 17; and (4) "gross deviation from professional standards of care." Docket No. 1 at 23. The Court will address each in turn.
1. Failure to Provide
Plaintiff's Complaint lists several disability-related accommodations which Defendant allegedly did not provide to E.M.-thus denying him the full benefits of the school program: (1) continued access to special education services (except speech accommodations and occupational therapy), (2) a psychological assessment, (3) school-based counseling services, (4) payment for community-based counseling services, (5) an aide to shadow or observe E.M. during school, and (6) social skills training. Docket No. 1 at 17-As a result, Plaintiff sufficiently alleged E.M. was denied proper disability-related accommodation services for which Defendant was responsible. See Melton , 391 F.3d at 671-72.
To show that the denial of services was "by reason of" Plaintiff's disability, Plaintiff must show that the denial was intentional. Delano-Pyle , 302 F.3d at 574. The Fifth Circuit has not defined what constitutes intent under Title II of the ADA or § 504 of the RA. See Perez v. Doctors Hosp. at Renaissance, Ltd. , 624 F. App'x 180, 184-85 (5th Cir. 2015) (declining to "make new law on the nature of intent.").
*625 That said, "every circuit that has reached the question of what standard to apply for 'intentional discrimination' has concluded that 'deliberate indifference' is the proper standard." McCollum v. Livingston , No. 4:14-cv-3253, 2017 WL 2215627, at *2, n.3 (S.D. Tex. May 19, 2017). Courts applying the deliberate indifference standard require that a plaintiff show that a defendant: (1) knew that a federally protected right was substantially likely to be violated; and (2) failed to act despite that knowledge. S.H. ex rel. Durrell , 729 F.3d 248, 265 (3d Cir. 2013) (citing Alexander v. Choate , 469 U.S. 287, 295, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) ).
Plaintiff's Complaint alleges Defendant recognized E.M. as disabled when Defendant placed him in special education services. Docket No. 1 at 2, 17. Ms. Guerra also repeatedly communicated with school officials about E.M.'s experiences at school. Docket No. 1 at 12, 13, 15, 16. Viewed in the light most favorable to Plaintiff, these factual allegations sufficiently allege Defendant knew E.M. needed reasonable disability accommodations, satisfying the first element of the deliberate indifference test.
For Plaintiff to establish the second prong of deliberate indifference, Plaintiff must provide evidence to suggest that Defendant "failed to act despite such knowledge." S.H. , 729 F.3d at 265. Courts have held that a defendant's failure to provide the accommodation "must be a result of conduct that is more than negligent, and involves an element of deliberateness." Duvall v. County of Kitsap , 260 F.3d 1124, 1139 (9th Cir. 2001).
Plaintiff alleges Defendant failed to provide certain reasonable accommodations despite its knowledge that E.M. needed those accommodations. Docket No. 1 at 19. And Plaintiff alleges Defendant intentionally removed E.M. from special education services to retaliate against Ms. Guerra. Docket No. 1 at 17. Said alleged conduct "involves an element of deliberateness" necessary to satisfy the second prong of the deliberate indifference test. Duvall , 260 F.3d at 1139. As a result, Plaintiff adequately pleaded that Defendant was deliberately indifferent.
Finally, Plaintiff must also allege "facts creating an inference of professional bad faith or gross misjudgment" to sustain a claim for intentional discrimination under Title II of the ADA and § 504 of the RA. C.C. , 641 F. App'x at 426 ; see also D.A. , 629 F.3d at 455. The Fifth Circuit has not defined when an educator's actions constitute professional bad faith or gross misjudgment, see, e.g. I.A. v. Seguin Indep. Sch. Dist. , 881 F.Supp.2d 770, 782 (W.D. Tex. 2012) ; but "Congress did not intend § 504 or ADA claims to create general tort liability for the government." Estate of A.R. v. Muzyka , 543 F. App'x 363, 365 (5th Cir. 2013). "So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals," school officials are not liable under § 504 of the RA or Title II of the ADA. Reed v. Kerens Indep. School District , No 3:16-cv-1228-BH, 2017 WL 2463275, at *13 (N.D. Tex. June 6, 2017).
Despite such a demanding standard, Plaintiff sufficiently pleaded facts giving rise to an inference of bad faith or gross misjudgment. Most notably, Plaintiff's Complaint alleges Defendant removed E.M. from certain special education services without valid educational justification. Docket No. 1 at 17. Plaintiff also alleges Defendant refused to provide other accommodations requested by Ms. Guerra during repeated conversations with school officials. See Docket No. 1 at 12, 13, 15, 16.
*626 Taken together, these allegations are enough to determine that Defendant plausibly acted in bad faith or exercised gross misjudgment. See Rideau v. Keller Indep. Sch. Dist. , 978 F.Supp.2d 678, 683-84 (N.D. Tex. 2013) (finding dispute of material fact about bad faith or gross misjudgment where school district had notice of alleged misconduct and failed to repair the situation).
Plaintiff has therefore sufficiently pleaded a valid claim of intentional discrimination based on disability under the RA and the ADA. Defendant's motion to dismiss the claim is denied.
2. Failure to Protect
Plaintiff's Complaint also alleges Defendant violated the RA and ADA because of Defendant's failure to stem the harassment and bullying perpetuated against E.M., denying E.M. access to a "safe and non-hostile educational environment." Docket No. 1 at 22. A claim of discrimination under § 504 or the ADA based on a hostile environment because of peer-to-peer harassment must sufficiently allege:
(1) [the student] was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) defendant knew about the harassment, and (5) defendant was deliberately indifferent to the harassment.
Estate of Lance , 743 F.3d at 996. As with Plaintiff's Failure to Provide claim, Plaintiff must also allege facts supporting an inference of "professional bad faith or gross misjudgment." C.C. , 641 F. App'x at 426 (quoting D.A. , 629 F.3d at 455 ).
Defendant does not dispute that, during the time relevant to this action, E.M. was "an individual with a disability." Additionally, Plaintiff's allegations that E.M.'s peers repeatedly mocked his speech impediment and his intelligence sufficiently plead that E.M. "was harassed based on his disability." Cf. Estate of Lance ex rel. Lance v. Kyer , No. 4:11-cv-32, 2012 WL 5384200, at *4 (E.D. Tex. Sept. 11, 2012) (finding harassment was not based on disability because of a lack of evidence that the student "was bullied ... because of his disability" by his peers).
Plaintiff's Complaint alleges a constant stream of physical and verbal harassment inflicted upon E.M. by his peers over a two-and-a-half-year period-both inside and outside the classroom. E.M.'s peers repeatedly orally insulted him, damaged his property, and, once, knocked his front teeth out to the point where the roots were exposed. See Docket No. 1 at 17. As a result, E.M.'s academic performance declined. E.M. now suffers from additional emotional problems; and his speech impairment is exacerbated because of the injuries suffered during the February 2016 incident. Docket No. 1 at 17-18. One instance of bullying even made E.M. afraid to attend class. Docket No. 1 at 17.
Taken together, said factual allegations reveal the stream of bullying had a tangible effect on E.M.'s ability to engage at school, denying him equal access to Defendant's educational opportunities and resources. See M.J. v. Marion Indep. Sch. Dist. , No. SA-10-CV-00978-DAE, 2013 WL 1882330, at *10 (W.D. Tex. May 3, 2013) (stating a reasonable jury could find the third prong satisfied where a student plaintiff refused to answer questions in class for fear of being harassed by his classmates). The allegations go beyond "the sort of teasing and bullying that generally takes place in schools." Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist , 647 F.3d 156, 167 (5th Cir. 2011).
*627 Plaintiff has thus adequately pleaded facts satisfying the third prong of Estate of Lance .
Plaintiff also sufficiently alleges Defendant knew about the harassment, satisfying the fourth prong of Estate of Lance . On top of her correspondence, Ms. Guerra had many conversations with many different school officials about E.M.'s experiences at Middle School, see Docket No. 1 at 12, 13, 15, 16; E.M. also reported at least one instance of bullying directly to his teacher Ms. Brenneke, Principal Leal, and Counselor Lanoy. Docket No. 1 at 11.
The final prong of Estate of Lance requires Plaintiff to plead facts giving rise to a plausible inference that Defendant was deliberately indifferent to known acts of harassment from E.M.'s peers. 743 F.3d at 996. This is a demanding standard: a school district is "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Estate of Lance , 743 F.3d at 997 (quoting Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ. , 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) ). Neither negligence nor mere unreasonableness will suffice. Id.
Still, Plaintiffs sufficiently alleged Defendants were deliberately indifferent to the harassment perpetuated against E.M. Plaintiff's Complaint alleges Ms. Guerra delivered seven rounds of letters to school officials over a span of two-and-a-half years, each detailing a separate instance of harassment and asking for assistance. Docket No. 1 at 11-17. At best, Defendant only investigated one such instance: the February 2016 incident. Docket No. 1 at 14. And in investigating the February 2016 incident, Defendant refused to allow Ms. Guerra to review a video of the incident before concluding the incident was E.M.'s fault and closing the matter. Docket No. 1 at 14. Defendant's alleged conduct is unreasonable because it reflects a consistent pattern of lack of concern for E.M.'s wellbeing in the face of repeated allegations of serious peer-to-peer harassment and bullying.
Plaintiff has sufficiently pleaded a valid claim under Title II of the ADA and § 504 of the RA for hostile environment because of peer-to-peer harassment. Defendant's motion to dismiss the claim is denied.
3. Retaliation
Plaintiff claims a separate cause of action against Defendant under the RA and ADA for retaliating against Guerra by removing E.M. from special education services. Docket No. 1 at 17-18. But Plaintiff did not identify a cause of action for retaliation-implicit or explicit-under either statute. Plaintiff therefore failed to state a claim upon which relief can be granted. Defendant's motion to dismiss Plaintiff's retaliation claim is granted.
4. Gross Deviation From Professional Standards of Care
Plaintiffs' Complaint references a separate cause of action under the RA and ADA for Defendant's alleged "gross deviation from professional standards of care." Docket No. 1 at 23; see also Docket No. 11 at 21. But Plaintiff did not identify a separate cause of action under either statute for merely deviating from professional standards of care, and therefore failed to state a claim upon which relief can be granted. Defendant's motion to dismiss Plaintiff's claim for gross deviation from professional standards of care is granted.
IV. CONCLUSION
For these reasons, Defendant's MTD (Docket No. 7) is GRANTED IN PART
*628 and DENIED IN PART. These claims are DISMISSED WITHOUT PREJUDICE: Retaliation, Gross Deviation from Professional Standards of Care, and all constitutional claims.
Plaintiff's claims of intentional discrimination ("Failure to Provide"), peer-to-peer harassment ("Failure to Protect"), Failure to Notify, and liability for preventing Mrs. Guerra from watching a video of the February 2016 incident survive against Defendant San Benito Consolidated Independent School District.

Unless otherwise noted, all facts were obtained from Plaintiff's "First Original Complaint" (Docket No. 1). In considering Defendant's MTD, the Court must take all of Plaintiff's sufficiently pleaded factual allegations as true. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Plaintiff's Complaint does not affirmatively identify "Principal Perez."