# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2021

Lyle W. Cayce
Clerk

No. 20-20115

Nicole Harrison; B. F., Nicole Harrison a/n/f of B.F.,

*Plaintiffs—Appellants*,

*versus*

Klein Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2380

Before Haynes, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:*

Plaintiff-Appellant Nicole Harrison appeals the summary judgment dismissing the failure to accommodate and hostile educational environment discrimination claims that she has asserted under Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, on behalf of her minor child, B.F.,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20115

against Defendant–Appellee Klein Independent School District (KISD). We have carefully reviewed the parties' submission to this court and, in February 2021, heard oral argument by counsel. Finding no error in the district court's determination that sufficient evidence of the requisite "deliberate indifference" is lacking, we AFFIRM.

I.

Plaintiff-Appellant Nicole Harrison is the mother of B.F., a minor child with multiple physical and cognitive disabilities, including communication problems, problems with walking and balance, and an inability to handle his own toileting. During the relevant time period (the 2016–2017, 2017–2018, and 2018–2019 school years), B.F. attended two KISD elementary schools as a special education student. He changed schools between the 2017–2018 and 2018–2019 school years. Born in May 2008, B.F. was 8 years old during the 2016–2017 school year, but functioned at a much younger age level.

On July 11, 2018, Harrison filed suit, asserting disability discrimination claims against KISD and certain school personnel. In December 2019, all of Harrison's claims except those asserted against KISD, pursuant to the ADA and Rehabilitation Act, were settled. With those claims, Harrison asserts that KISD discriminated against B.F. based on his disabilities, and failed to reasonably accommodate those disabilities, in violation of the ADA and the Rehabilitation Act. Additionally, contending that B.F. suffered abuse from and harassment by school staff members, Harrison also alleges that KISD failed to provide a non-hostile educational environment for B.F., in violation of the Rehabilitation Act.

On January 26, 2020, after hearing oral argument, the district court orally granted KISD's motion for summary judgment and dismissed Harrison's claims with prejudice. As set forth in the hearing transcript, the

No. 20-20115

district court reasoned that Harrison's summary judgment evidence failed to establish the existence of a genuine factual dispute regarding whether KISD had acted with deliberate indifference relative to B.F.'s rights under the ADA and the Rehabilitation Act.  This appeal followed.

## II.

Summary judgments are reviewed de novo, "'applying the same standard that the district court applied.'" *Aggreko*, *L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 687 (5th Cir. 2019) (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016)). Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." *Leasehold Expense Recovery*, *Inc. v. Mothers Work*, *Inc.*, 331 F.3d 452, 456 (5th Cir. 2003) (internal quotation marks and citation omitted). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017).  All facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).  The resolution of a genuine dispute of material fact "is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002). "We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court." *Amerisure Mut. Ins. Co. v. Arch Specialty Ins. Co.*, 784 F.3d 270, 273 (5th Cir. 2015).

No. 20-20115

III.

As set forth above, Harrison alleges that B.F., while a student at two KISD elementary schools, was a victim of discrimination based upon disability, as contemplated by the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act").[1] "The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria Cnty.*, *Texas*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Rizzo v. Children's World Learning Ctrs.*, *Inc.*, 173 F.3d 254, 261 (5th Cir. 1999)). "The [Rehabilitation Act] was enacted 'to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others.'" *Id.* (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988)).

Title II of the ADA provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

---

[1] Harrison did not assert a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, in this action. "The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'— more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017); *Doe v. Dallas Indep. Sch. Dist.,* 941 F.3d 224, 227 (5th Cir. 2019) ("'FAPE' is a statutory term of art . . . generally centered on a disabled student's access to adequate education at school."). The IDEA requires exhaustion of certain administrative procedures for lawsuits seeking relief for a state's denial of a free appropriate public educations. *Id.* at 748–750, 752–758; 20 U.S.C. § 1415 (*l*); *see also Doe,* 941 F.3d at 227 (§ 1415(*l*)'s exhaustion requirement applies where the "'gravamen of a complaint' is based on "the denial of an appropriate education"). Because Harrison has not sought relief under the IDEA, we do not address the possible merit of a FAPE claim based on the instant record.

No. 20-20115

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Except for causation, Rehabilitation Act claims are analyzed under the same standard applicable to ADA claims. *See*, *e.g.*, *Wilson v. City of Southlake,* 936 F.3d 326, 330 (5th Cir. 2019); *D.A.*, *ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453–54 (5th Cir. 2010).[2]

Harrison asserts two types of disability discrimination claims against KISD. First, Harrison contends that KISD discriminated against B.F., in violation of both the ADA and the Rehabilitation Act, by failing to reasonably accommodate his multiple disabilities. Second, Harrison maintains that abuse and harassment by school staff members subjected B.F. to a hostile educational environment in violation of the Rehabilitation Act.[3]

In support of these claims (as amended in May 2019), Harrison points to three instances—on March 22, 2017, April 26, 2017, and December 12, 2018—for which classroom video shows a school staff member intentionally causing B.F. to suffer physical injury or contact, as well as multiple occasions, in September 2017, in which B.F.'s school bus driver yelled and screamed at B.F. whilst on the bus. She also references various scratches, bumps, and bruises that B.F. received during the course of these school years.

---

[2] The causation standard under Section 504 is "solely by reason" of disability, "whereas the ADA applies even if discrimination is not 'the sole reason' for the challenged action." *C.L. v. Leander Indep. Sch. Dist.*, 2013 WL 3822100, at *2 (W. D. Tex. July 23, 2013) (citing *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)). This distinction, however, is not pertinent to this particular appeal.

[3] Harrison also refers to this claim as a "failure to protect" claim.

Additionally, alleging that B.F. came home with a urine-soaked diaper at least once a week during the 2016–2017 school year, Harrison argues that school staff did not adequately assist B.F. with toileting and/or provide necessary diaper changes during that time.

In short, Harrison contends KISD inadequately staffed B.F.'s care. More specifically, Harrison maintains that KISD failed to utilize the number of competent staff members necessary to protect B.F. from injury at school, particularly including incidents of abuse by school staff, and to provide necessary supervision, care, and assistance with ambulation, toileting, and hygiene, including diaper changes.

Both the ADA and the Rehabilitation Act require Harrison to establish that: (1) B.F. is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act or the ADA; (2) B.F. was excluded from participation in, or was denied benefits of, services, programs, or activities for which the school district is responsible; (3) B.F.'s exclusion, denial of benefits, or discrimination was by reason of his disability; and (4) the exclusion, denial of benefits, or discrimination was intentional. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *Delano-Pyle*, 302 F.3d at 574. For a claim asserting a school district's failure to make reasonable accommodations for disability, Harrison must show that (1) B.F.'s disability and limitations were known by the school district; (2) the school district failed to make reasonable accommodations for the known limitations; and (3) the failure was intentional. *See, e.g.*, *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.2d 242, 247 (5th Cir. 2013); *D.A., ex rel. Latasha A.*, 629 F.3d at 455 (cause of action stated when school district has refused to provide reasonable accommodations); *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983). A mere disagreement with the correctness of educational services provided, however, does not state a discrimination

claim. *D.A.*, *ex rel. Latasha A.*, 629 F.3d at 455 (citing *Marvin H.*, 714 F.2d at 1356).

The parties agree that B.F. is a "qualified person with a disability" and that the "intentional" element of Harrison's claims may be satisfied by evidence establishing "deliberate indifference."[4] To establish deliberate indifference in the context of reasonable accommodations for disability, Harrison had to put forth sufficient evidence that (1) an appropriate person; (2) had actual notice of B.F.'s disability and the necessity of a reasonable accommodation; and (3) responded with deliberate indifference.  To be an appropriate person, one must, "at a minimum, [have] authority to institute corrective measures on the district's behalf." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998).[5]  For purposes of this matter, the parties agree that principals and assistant principals are appropriate persons.

Citing *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992, 994, 1000–01 (5th Cir. 2014), Harrison also purports to allege a separate disability discrimination claim, pursuant to the Rehabilitation Act, predicated on contentions that KISD failed to provide a non-hostile educational environment to B.F.  Harrison outlines the following elements

---

[4] The parties agree that the deliberate indifference standard applies. KISD's brief does note the statement from our opinion in *Delano-Pyle* that "[t]here is no deliberate indifference standard applicable to public entities for purposes of the ADA or the RA," but suggests we should disregard it as inconsistent with prior United States Supreme Court precedent.  *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002); *see also PlainsCapital Bank v. Keller Indep. Sch. Dist.*, 746 F. App'x 355, 361 (5th Cir. 2018) (per curiam) (discussing this issue). Given the parties' agreement—and also given our conclusion that the deliberate indifference standard was not met here—we need not address the import of our statement in *Delano-Pyle* in this appeal.

[5] Although *Gebser* address a claim brought under Title IX based on a teacher's sexual harassment of a student, it is not apparent that a different rule (regarding this particular issue) would apply in this context.

for this claim: (1) B.F. must be shown to have been a victim of a hostile educational environment because of his disability; (2) the hostile conduct must be severe and pervasive; (3) KISD must have been on notice of and deliberately indifferent to the hostile environment; and (4) B.F. must have experienced a deprivation of educational opportunities because of it. Regarding the last element, Harrison points to B.F. having experienced verbal and physical abuse at two different schools and on a school bus, missing class on a number of occasions in order to seek medical care for injuries suffered at school, and having been traumatized by hostile environment experiences.

In response, KISD questions whether the Fifth Circuit recognizes a hostile educational environment claim premised upon student harassment by school employees. Assuming that such a claim is legally viable, KISD maintains that the evidence establishes that it is entitled to summary judgment. In support of this position, KISD argues that B.F. offers only conclusory assertions, unsupported by evidence or law, to support his contention that the alleged discriminatory treatment was severe and pervasive. KISD contends that B.F.'s failure in this regard forfeits his claim, citing *Wise v. Wilkie*, 955 F.3d 430, 438 n.28 (5th Cir. 2020) (failure to properly brief issue constitutes forfeiture). Moreover, KISD adds, the evidence conclusively establishes that KISD was not deliberately indifferent towards B.F., which is dispositive of B.F.'s claim.

As stated above, the parties agree that deliberate indifference is an essential element for each of Harrison's claims against KISD. Deliberate indifference is a "high bar." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011). "Because deliberate indifference is a lesser form of intent rather than a heightened degree of negligence, neither negligent nor merely unreasonable responses are enough." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal quotations and

citations omitted). Rather, to clear that "high bar," a response must be "clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *Sanches,* 647 F.3d at 167. Bypassing the questions of "notice" and "appropriate person" status, the district court dismissed Harrison's claims based on its determination that sufficient Rule 56 evidence of KISD's deliberate indifference to B.F.'s health and safety needs had not been provided. We find no error in the district court's determination.

As revealed by the parties' briefs and pertinent portions of the record, B.F.'s experiences are unquestionably heartbreaking. While the obstacles and struggles that B.F. and his parents encounter each and every day, as a result of B.F.'s disabilities, unquestionably are substantial and difficult—and abuse by teachers and caregivers is absolutely intolerable and tragic—such wrongdoing does not automatically render the school district liable under the ADA or the Rehabilitation Act for faculty wrongdoing. And, certainly, reasonable minds may question whether KISD could have and should have done more to monitor, protect, and assist B.F. while he was at school. Importantly, however, neither of those standards is determinative of the appeal before the court. Rather, as the parties have recognized, for Harrison's claims to have survived summary judgment, the record must support a reasonable inference that KISD acted with "deliberate indifference" to B.F.'s rights.

As recounted in KISD's brief, the record reflects that, upon becoming aware of the incidents involving Developmental Aide Hernandez, Teacher Gay, and the verbally abusive school bus driver, both school principals promptly undertook thorough investigations and notified other pertinent KISD personnel. As a result, Hernandez and Gay were immediately removed from the classroom, their employment ended, and both Child Protective

Services and the KISD police department were notified. Also, the bus driver was immediately reassigned from B.F.'s route.

Harrison was promptly apprised of KISD's resolution of each of these incidents and, significantly, identifies nothing more that KISD should have done in response to these actions. Nor, moreover, is there any indication in the record that either school principal was aware that Hernandez or Gay had previously hit, injured, or otherwise mistreated a student, or that pertinent KISD personnel eschewed appropriate supervision and oversight of the district's special education programs, instructors, and students.

While it is logically conceivable that KISD's provision of supplemental staff for B.F. would have prevented Hernandez's and/or Gay's abuse, as well as B.F.'s urine-soaked diapers and various falls, bumps, bruises, and scratches, the record does not contain sufficient Rule 56 evidence validating that theory. And, on appeal, neither mere logical possibility nor after-the-fact conjecture is an acceptable substitute for the requisite record evidence. Most importantly, however, even if the panel assumes that Harrison is correct about the efficacy of supplemental staff, the record likewise lacks sufficient summary judgment evidence demonstrating KISD's requisite deliberate indifference, *i.e.*, that pertinent KISD personnel had the necessary advance notice of a need for additional and/or more competent staff but nevertheless made a "clearly unreasonable" decision to do nothing.

Harrison's arguments to the contrary are unavailing. For instance, on the subject of B.F.'s weekly urine-soaked diapers, the record also reflects that B.F. was able to make the sign for "potty," use the toilet with assistance, let school staff know when he is wet, and go to the changing table independently or when asked. In any event, Harrison had no complaints regarding B.F.'s diapers for the 2017–2018 and 2018–2019 school years. Rather, her

complaints are directed only to the 2016–2017 school year in which B.F. attended Bernshausen Elementary. During that time, Harrison maintains that she would make a note in B.F.'s daily folder whenever he came home with a urine-soaked diaper in order to apprise school personnel. The record, however, seemingly contains neither the folder nor an explanation for its omission.

Harrison also states that she spoke with the assistant principal regarding the matter, who said that he would "look into it," and then she "went to the principal," who communicated that, upon inquiry, the principal was told that B.F.'s diaper was being changed. No dates or other concrete information, however, are provided relative to these exchanges. Nor does the record reflect any additional communication or continued follow-up by Harrison regarding this (unquestionably important) matter with KISD personnel, including the school nurse, or the KISD Director of Special Education. Indeed, when the ARD Committee, including Harrison, convened, in December 2016, to revise B.F.'s "Annual ARD," Harrison agreed to the proposed [IEP] plan. Furthermore, the notes from the meeting do not reflect any voiced concerns or requests for change relative to B.F.'s toileting needs. Notably, the same is true of the "Conference Record" log that B.F.'s teacher maintained of written and telephone communications with B.F.'s parents during the 2016–2017 school year.

Similarly, on the topic of additional staff supervision for B.F., Harrison's brief maintains that "she complained to the School Principal and Vice-Principal about her concerns B.F. was not safe and no one responded." To support this assertion, page 593 of the record is cited. That page, an excerpt from Harrison's deposition transcript, discusses B.F.'s urine-soaked diapers. It reflects no communication with the school principal regarding safety. Harrison's brief also states that she also "specifically asked for a one-to-one aide but that request was never addressed." Page 591 of the record is

cited for this assertion.  That page is an excerpt from Harrison's deposition transcript. Although a request for a "one-to-one aide" that was never granted is mentioned in the deposition transcript, that is the extent of the information provided. No record evidence indicates to whom this request was made, when it was made, what reason for the request was provided, and what reason, if any, was given for its denial.

Harrison also represents that, in spring 2017, B.F.'s father "complained [B.F.] was not being supervised by enough staff to benefit from all the educational services he was otherwise due."  Pages 686 and 687 of the record are cited for this assertion. Those pages, which are part of Teacher Mosbeck's 2016–2017 "Conference Record," however, simply reflect that B.F.'s father asked B.F.'s teacher whether a lack of supervision prevented B.F.'s participation in certain school activities, and received a negative response. They hardly reflect that pertinent KISD personnel received a complaint of inadequate staffing from a parent and simply ignored it.

Finally, Harrison's submission includes no citation to expert testimony, or other generally accepted authoritative source(s), directly addressing staffing requirements for the proper supervision, care, and instruction of B.F., and his classmates, whilst in an educational setting.  In the absence of such materials, we, and ultimately a jury, are essentially asked to speculate regarding staffing needs—both in terms of number and qualifications—for B.F. and/or his classroom.  Such guesswork is hardly appropriate given the nature and extent of B.F.'s disabilities and the lack of knowledge that the average layperson has regarding his particular needs and the proper functioning of special education programs.

No. 20-20115

IV.

Plaintiff–Appellant Harrison has not shown that the record contains the evidence necessary to support a finding of deliberate indifference.[6] Accordingly, we AFFIRM the district court's summary judgment dismissing Harrison's claims with prejudice.

---

[6] Because we find the deliberate indifference element unmet here, we need not determine whether our precedent supports a hostile educational environment claim under the ADA or Rehabilitation Act.