

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00001-CV

———————————————

RESPONSIVE EDUCATION SOLUTIONS, Appellant

V.

SUSAN KIRSCHNER, INDIVIDUALLY, AND AS NEXT FRIEND OF A.K., A
MINOR CHILD, Appellee

---

On Appeal from the 393rd District Court
Denton County, Texas
Trial Court No. 20-3422-393

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Opinion by Chief Justice Sudderth

## OPINION

## I. Introduction

Appellee Susan Kirschner, individually, and as next friend of A.K., a minor child, sued Appellant Responsive Education Solutions (RES), an operator of open-enrollment charter schools,[1] for violating 42 U.S.C. §§ 1981, 1983 and Section 504 of the Rehabilitation Act of 1973.[2] RES filed a plea to the jurisdiction, which the trial court granted regarding all but A.K.'s § 1983 claim. In this accelerated interlocutory appeal, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8), RES argues that the trial court erred by denying part of its plea. We agree and thus reverse that portion of the trial court's order and render judgment dismissing the lawsuit for want of jurisdiction.

## II. Background

In 2015, Kirschner, who is white, enrolled her daughter A.K., who is black, in the second grade at Founders Classical Academy of Flower Mound, an open-enrollment charter school, which is owned by RES. Five years later, Kirschner,

---

[1]An open-enrollment charter school is part of the state's public school system. Tex. Educ. Code Ann. § 12.105. RES is thus a "governmental unit" and can bring this interlocutory appeal. *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 74–75 (Tex. 2011) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8), 101.001(3)(D)).

[2]29 U.S.C. § 794(a), commonly referred to as Section 504, prohibits disability discrimination by recipients of federal funding. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *see also D.A. ex rel. Latasha A. v. Houston ISD*, 629 F.3d 450, 453 (5th Cir. 2010) (explaining that Section 504 broadly prohibits discrimination against disabled persons in federally assisted programs or activities).

2

individually, and as A.K.'s next friend, initially sued RES for violating 42 U.S.C. § 1981 and Section 504 of the Rehabilitation Act of 1973 and for breach of contract.

In her original petition and in her subsequently amended petition, Kirschner alleged that the school had unfairly labeled A.K. as a problem child and had not tested A.K. for "cognitive and behavioral performance issues, such as autism or similar disorders," despite Kirschner's numerous requests that she "be tested for autism or similar academic performance and cognitive behavioral issues so that treatment and a behavioral plan could be implemented for [her]." Kirschner alleged that she had "requested an assessment be done to determine [the] proper course of behavioral and treatment plan to multiple parties" but that "the school continued its refusal to test [A.K.]." Kirschner further complained that the school did not treat A.K. with the same care and consideration that would have been given to her if A.K. had been white.[3] She sought actual and punitive damages, interest, court costs, and attorney's fees.

RES answered with a general denial and raised a number of affirmative defenses, including limitations and the failure to exhaust administrative remedies "for their claims under Section 504 of the Rehabilitation Act of 1973." Four months later,

---

[3]Kirschner also brought her own complaints about how the school treated her as a white parent of a black child, but she conceded in the trial court that limitations barred those claims.

RES filed a plea to the jurisdiction, asking the trial court to dismiss all of the claims with prejudice.

In its original plea to the jurisdiction, RES complained that limitations had run and that immunity barred the § 1981 and breach-of-contract claims. RES also argued that the Section 504 claim should be dismissed because it overlapped with the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400, which required exhaustion of remedies.

Kirschner conceded in her response to the plea that the breach of contract claim was improper, that limitations had run for her individual claims, and that those claims should be dismissed. But she argued that limitations had not run for A.K.'s claims because of A.K.'s minor status and that they had met the exhaustion requirement "through implication" because of the "numerous requests to address A.K.'s educational needs" that the school had ignored. She filed an amended petition on the same day that she filed her response, adding a claim under 42 U.S.C. § 1983.[4]

---

[4]42 U.S.C. § 1983 authorizes a civil claim for deprivation of rights and provides, in pertinent part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983.

4

Regarding § 1983, Kirschner alleged,

> The liberty interest that [A.K.] has been deprived of is to receive [the] same quality education and attention to her educational needs as other students. Or, or in addition to, she has been deprived of her liberty interests to receive an education that is sufficient enough to meet her needs. Instead, she has been harmed by the Defendant through this abridgment of her rights and deprivation of her liberty interests, one of which[] is to remain free of gross neglect or intentional conduct, leading to emotional abuse and/or trauma.

RES then filed an amended plea to the jurisdiction, adding the § 1983 claim to its limitations[5] and IDEA overlap-and-failure-to-exhaust arguments. RES asserted that Kirschner and A.K. had failed to request a special education due process hearing under the IDEA and that there was "no request for a hearing by 'implication'" because IDEA exhaustion requires findings and a decision by an administrative body. *See* 20 U.S.C.A. § 1415(f)–(g) (explaining the IDEA's exhaustion procedures), (*l*) (explaining interplay between the IDEA and other federal statutes).

---

[5]The applicable limitations period for a § 1983 claim is two years—the state's limitations period for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1093 (2007); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). While a minor is generally considered to be under a legal disability, Tex. Civ. Prac. & Rem. Code Ann. § 16.001(a)–(b), Section 16.001's tolling provisions have not been incorporated into the IDEA limitations scheme. *See* 19 Tex. Admin. Code § 89.1151(c) (2018) (Tex. Educ. Agency, Special Education Due Process Hearings) (stating tolling of the one-year limitations period is pursuant to 50 U.S.C. § 3936, (e) (stating that TEA must include in the notice of procedural safeguards a statement that limitations for the parent of a student to request an impartial due process hearing may be tolled if the parent is an active-duty member of the armed forces or for other exceptions not applicable here); *Reyes v. Manor ISD*, 850 F.3d 251, 255 (5th Cir. 2017) ("[W]e cannot borrow a limitations provision from a different state statute when the legislature of Texas set up a specific limitations scheme for IDEA due process hearings."). Thus, if the § 1983 claim is an IDEA claim in disguise, a one-year limitations period applies.

5

During the hearing on RES's amended plea, Kirschner's counsel argued that "the implication of all [of Kirschner's] numerous requests to have meetings, to have assessments created for her daughter to see what best course of academic curriculum should be presented to her," was enough to meet the exhaustion requirement and, alternatively, that § 1983 did not have an exhaustion requirement, relying on *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 516, 102 S. Ct. 2557, 2568 (1982).[6]

After the hearing, the trial court dismissed with prejudice all of Kirschner's individual claims based on limitations. It dismissed with prejudice A.K.'s § 1981 claim based on Eleventh Amendment immunity. And it dismissed with prejudice A.K.'s Section 504 claim for failure to exhaust administrative remedies.[7] However, it denied the amended plea to the jurisdiction regarding A.K.'s § 1983 claim.

### III. Discussion

In its single issue, RES argues that the trial court erred by failing to find that A.K.'s § 1983 claim was subject to the IDEA's exhaustion requirement because the claim relates to RES's alleged failure to provide A.K. with a free and appropriate public education. RES further argues that its plea should have been granted because

---

[6]*Patsy* involved a § 1983 employment discrimination lawsuit against a university. 457 U.S. at 498, 102 S. Ct. at 2558.

[7]As noted by the Fifth Circuit regarding Section 504, a child "cannot be discriminated against because of his disability until it has been demonstrated to exist." *D.A.*, 629 F.3d at 455.

6

it was undisputed that A.K. had not exhausted her administrative remedies under the IDEA and that a stay to exhaust those remedies would be futile.

## A. Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is generally to defeat an action "without regard to whether the claims asserted have merit." *Mission Consol. ISD v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Typically, the plea challenges whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.* Whether a trial court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law that we review de novo. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause, construing the pleadings liberally in the plaintiff's favor and looking to the pleader's intent. *Id.* (citing *Miranda*, 133 S.W.3d at 226). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 239–40.

7

**B. The Pleadings**

Kirschner alleged that the school had refused to test A.K. for "cognitive and behavioral performance issues, such as autism or similar disorders" despite Kirschner's numerous requests "to multiple parties" for assessment and testing so that a treatment and behavioral plan could be implemented and despite her "suggest[ions] that the school take supportive action concerning her daughter." Kirschner complained that her requests "fell on deaf ears and thus[] were routinely ignored" and that the school "dismissed all of her pleas for intervention." Kirchner stated that the school continued to refuse to test A.K. and "refused nurturing, supportive action that would have better facilitated a healthy and constructive academic environment" for A.K. until the end of the school year.

Kirschner further complained that the school did not treat A.K. with the same care and consideration that would have been given to her if A.K. had been white. Specifically regarding § 1983, Kirschner alleged that A.K. had been deprived of "receiv[ing] same quality education and attention to her educational needs as other students" and of "receiv[ing] an education that is sufficient to meet her needs." She sought actual and punitive damages,[8] interest, court costs, and attorney's fees.

---

[8] Punitive damages are not available against a governmental entity for constitutional violations. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981); *McMillen v. New Caney ISD*, 939 F.3d 640, 647 n.1 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2803 (2020).

## C. The IDEA

The IDEA exists to ensure that all children with disabilities[9] have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living. 20 U.S.C.A. § 1400(d)(1)(A). Through the IDEA, Congress offers federal funds to the states to assist in educating children with disabilities in exchange for the states' pledge to comply with a number of statutory conditions, including the provision of a FAPE to all eligible children. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017).

Under the IDEA, a FAPE consists of special education and related services that encompass instruction tailored to meet a child's unique needs and sufficient supporting services to permit the child to benefit from the instruction. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748–49 (2017) (referencing 20 U.S.C.A. § 1401(9)). An

---

[9]The IDEA defines a "child with a disability" as a child

> with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and . . . who, by reason thereof, needs special education and related services.

20 U.S.C.A. § 1401(3)(A); *see* Tex. Educ. Code Ann. § 29.003(b)(2) (listing disabilities—including autism—that prevent students between ages 3 and 21 from being adequately or safely educated in public school without the provision of special services); *see also* 19 Tex. Admin. Code § 89.1040 (2018) (Tex. Educ. Agency, Eligibility Criteria).

"individualized education program," (IEP) serves as the primary vehicle for providing a child with the promised FAPE. *Id.* at 749. The IEP spells out a personalized plan to meet all of the child's educational needs and documents the child's current levels of academic achievement, specifies measurable annual goals for how she can make progress in the general education curriculum, and lists the special education and related services to be provided so that she can advance appropriately toward those goals. *Id.*; *see* Tex. Educ. Code Ann. § 29.005 (describing Texas's IEP).

The IDEA allows for equitable monetary awards, such as reimbursement of expenses like private school tuition that a family has incurred to provide special education services when a FAPE has not been provided by the state in a timely manner prior to the enrollment in private school. 20 U.S.C.A. § 1412(a)(10)(C)(ii). It also allows for "compensatory awards," which are designed to provide services prospectively to compensate for a past deficient program. *McMillen*, 939 F.3d at 647.

## D. Exhaustion

To require a plaintiff to comply with the IDEA's exhaustion requirements when a claim is not brought under the IDEA, the relief sought under another federal mechanism (the Constitution, the Americans with Disabilities Act, Section 504, "or other Federal laws protecting the rights of children with disabilities") must "also [be] available under" the IDEA.[10] *Fry,* 137 S. Ct. at 750. The Court held in *Fry* that to

___

[10]In its rule of construction, the IDEA states,

require exhaustion under the IDEA, "a suit must seek relief from the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available,'" and that in determining whether a suit "seeks" relief from such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint. *Id.* at 752.

As further explained by the Fifth Circuit,[11] "a plaintiff may invoke any federal law to support a disabled student's claim for an adequate education; the plaintiff just must first exhaust under the IDEA." *McMillen*, 939 F.3d at 644. When IDEA procedures are not exhausted, a suit asserting other federal claims must be dismissed if it seeks relief that is also available under the IDEA. *Id.* Further, federal courts have interpreted § 1415(*l*)'s "relief available" to mean "relief for the events, condition[s], or

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C.A. § 1415(*l*) (emphasis added). Subsection (f) sets out the procedure for an impartial due process hearing. *Id.* § 1415(f). Subsection (g) sets out the procedure to appeal the findings and decision rendered in the impartial due process hearing. *Id.* § 1415(g).

[11]Precedent of the Fifth Circuit, though persuasive, is not binding on this court. *J & J Sports Prods., Inc. v. JWJ Mgmt., Inc.*, 324 S.W.3d 823, 830 (Tex. App.—Fort Worth 2010, no pet.). We are only obligated to follow our supreme court and the United States Supreme Court. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993). Nonetheless, we find the Fifth Circuit's construction of the IDEA helpful here.

consequences of which the person complains, not necessarily relief of the kind the person prefers." *Id.* at 648. That is, in a suit seeking damages for a school's failure to provide services under the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures created to remedy that failure in order to enforce the IDEA's statutory scheme. *Id.*

Exhaustion is not required when the gravamen of the plaintiff's suit is other than the denial of a FAPE, the IDEA's core guarantee. *Fry*, 137 S. Ct. at 748; *see D.A.*, 629 F.3d at 456 (noting that when a statutory regime already provides a comprehensive set of remedies for the enforcement of a federal right, there is a presumption against the availability of the more general remedial measures of § 1983). *Fry* applies retroactively. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97–98, 113 S. Ct. 2510, 2517–18 (1993) (stating that when the Court does not reserve the question of whether its holding should be applied to the parties before it, an opinion announcing a rule of federal law is retroactive).

In *Fry*, a child with severe cerebral palsy was not allowed to bring her service dog to kindergarten because the school provided a human aide who could provide to the child equivalent support. 137 S. Ct. at 750–51. The child's parents withdrew her from the school, initiated home-schooling, and filed a complaint with the U.S. Department of Education's Office of Civil Rights (OCR), arguing that the school's decision had violated the child's rights under Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* at 751. OCR agreed, and the child's parents sued the local

12

and regional school districts, along with the school's principal, for discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* at 751–52. The district court granted the defendants' motion to dismiss, holding that the family had to first exhaust the IDEA's administrative procedures, and the Sixth Circuit affirmed on that basis. *Id.* at 752.

The Court vacated the Sixth Circuit's decision, observing that if a suit is brought under a different statute and the remedy sought is *not* for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required because the plaintiff would not be able to acquire any relief from those procedures.[12] *Id.* at 752, 754–55. It remanded the case so that the Sixth Circuit could apply the Court's new analysis and establish to what extent the family had invoked the IDEA's dispute resolution process before bringing their suit. *Id.* at 758–59.

The Court noted that the IDEA guaranteed individually tailored educational services, while Title II of the ADA and Section 504 promised nondiscriminatory access to public institutions; although all three statutes might apply, "a complaint brought under Title II and [Section] 504 might instead seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation." *Id.* at 756.

---

[12]In *Fry*, the Court reserved for another day the question about whether exhaustion is required when the plaintiff complains about the denial of a FAPE but the specific remedy she requests, such as money damages for emotional distress, is not one that an IDEA hearing officer may award. 137 S. Ct. at 752 n.4.

13

The Court set out the following test for whether the gravamen of a complaint against a school concerns the denial of a FAPE or instead addresses disability-based discrimination: (1) Could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school, i.e., a public theater or library? (2) Could an adult at the school—an employee or visitor—have pressed essentially the same grievance? *Id.* "When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject." *Id.* "But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim." *Id.* The Court also noted that the proceedings' history might also identify the suit's gravamen as the denial of a FAPE if the parent previously initiated the IDEA's administrative procedures by filing a complaint and proceeding to a preliminary meeting or mediation and then a due process hearing. *Id.* at 757. In *Fry*, the family's pleadings did not accuse the school of refusing to provide educational instruction and services or suggest any implicit focus on the adequacy of the child's education but rather alleged only disability-based discrimination for refusing to allow the child to bring her service dog. *Id.* at 758.

The IDEA has a "carefully calibrated mechanism to prevent or remedy violations." *D.A.*, 629 F.3d at 456. Accordingly, the Fifth Circuit has held that nothing in § 1415(*l*) indicates an intent to facilitate the expansive remedies under

14

§ 1983 and that an IDEA claim cannot be asserted through § 1983. *Id.* The Fifth Circuit has likewise held that the IDEA's exhaustion requirement applies to plaintiffs who seek damages for the denial of a FAPE. *Heston, Next Friend of A.H v. Austin ISD*, 816 F. App'x. 977, 983 (5th Cir. 2020) (holding that such an interpretation is necessary so that a plaintiff cannot avoid exhaustion "merely by tacking on a request for money damages"); *see McMillen*, 939 F.3d at 648 ("The statutory preference is to solve these disputes by providing the student with her promised education, not by awarding damages years after the problem arises in the classroom.").

## E. Application

In her amended petition, Kirschner alleged that the school had refused to assess and test A.K. for disabilities despite her requests and suggestions, thereby depriving A.K. of a healthy and constructive academic environment and of the "same quality education and attention to her educational needs as other students" and "an education that [was] sufficient to meet [A.K.'s] needs." We apply the test set out by the Court in *Fry*: First, could A.K. have brought the same claim if the alleged conduct had occurred at a public facility that was not a school, such as a public theater or library? *See* 137 S. Ct. at 756. We think not, since a public facility that is not a school is not specifically tasked with providing a child with a healthy and constructive *academic* environment or an education. And second, could an adult at the school have pressed the same grievance? *See id.* Again, we think not, because no adult could be

15

deprived of a healthy and constructive academic environment or education in the school.

As to the other clue described by the Court—the history of the proceedings and whether the plaintiff previously invoked the IDEA's formal procedures to handle the dispute, *id.* at 757—Kirschner alleged that she had made numerous requests "to multiple parties" and had made suggestions that were ignored by the school. In Texas, a parent or legal guardian must make a written request to a school's director of special education services or to a district administrative employee for a full individual and initial evaluation of a student before the district must either (1) provide an opportunity for the parent or legal guardian to give written consent for the evaluation or (2) refuse to provide the evaluation and then give the parent or legal guardian notice of the IDEA's procedural safeguards. Tex. Educ. Code Ann. § 29.004(c); *see* 19 Tex. Admin. Code § 89.1011(b) (2018) (Tex. Educ. Agency, Full Individual and Initial Evaluation). Viewed in the light most favorable to her and assuming that her requests were made in writing to the appropriate school authorities, Kirschner's pleadings indicate that she invoked the IDEA's procedures.[13] *See Fry*, 137 S. Ct. at 757.

---

[13]Kirschner did not allege that the school withheld any information from her regarding the IDEA and its procedures. *See* Tex. Admin. Code § 89.1151(d) (2018) (Tex. Educ. Agency, Special Education Due Process Hearings) (stating that the one-year limit to bring an IDEA complaint "does not apply to a parent if the parent was prevented from filing a request for a due process hearing due to: (1) specific misrepresentations by the public education agency that it had resolved the problem forming the basis of the request for a hearing; or (2) the public education agency's

16

On its face, then, Kirschner's petition seeks redress for denial of a FAPE and indicates that she invoked, but did not exhaust, the IDEA's procedures because she did not first go through the hearing process to obtain findings and a decision for which she could seek judicial review.[14] *See McMillen*, 939 F.3d at 645 ("[C]omplaints that a school did not adopt a plan individualized to the student's needs sound in the IDEA."); *see also* 20 U.S.C.A. § 1415(g), (*l*). Accordingly, because the gravamen of A.K.'s § 1983 claim was the denial of a FAPE—the alleged failure to provide assessment and testing and appropriate education—the claim was subject to the IDEA's exhaustion requirements. *See McMillen*, 939 F.3d at 645. A.K.'s seeking compensatory damages does not otherwise cause her § 1983 claim to escape the IDEA's orbit. *See Heston*, 816 F. App'x. at 983.

Because A.K. failed to exhaust her administrative remedies before filing suit, the trial court erred by denying RES's plea to the jurisdiction on her § 1983 claim. We sustain RES's sole issue.

---

withholding of information from the parent that was required by 34 CFR, § 300.1, et seq. to be provided to the parent").

[14]Contrary to Kirschner's argument in her appellee's brief—that they made a *request* for a hearing through implication—IDEA exhaustion requires not only a hearing but also findings and a decision, and there is nothing in Kirschner's pleadings to show that these steps were met or that Kirschner and her daughter were otherwise prevented from pursuing them.

## IV. Conclusion

Having sustained RES's sole issue, we reverse the portion of the trial court's order denying RES's plea to the jurisdiction on A.K.'s § 1983 claim. And because A.K.'s pleadings affirmatively demonstrate incurable defects in jurisdiction that cannot be fixed by repleading, *see City of Westworth Vill.*, 558 S.W.3d at 239–40, we render judgment dismissing her § 1983 claim.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: April 22, 2021